**STATE of Missouri, Respondent,**

v.

**Mike WILSON, Appellant.**

**No. KCD 28875.**

Missouri Court of Appeals,
Kansas City District.

June 27, 1977.

Motion for Rehearing and/or Transfer
Denied Aug. 5, 1977.

Application to Transfer Denied
Sept. 12, 1977.

Richard J. Yocum, Asst. Public Defender, St. Joseph, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., and WASSERSTROM and TURNAGE, JJ.

WASSERSTROM, Judge.

On a jury finding of guilt on charges of second degree burglary and stealing, defendant was sentenced to two years on each count to run concurrently. He appeals, assigning eight points of error. We affirm.

Inasmuch as defendant does not challenge the sufficiency of the evidence, only a short statement of facts is necessary in order to place the points on appeal in understandable context. On Sunday morning, November 16, 1975, Mr. Harry Tate and his grandson Clarence Minnenhall left their home to go to church, taking along with them Johnny Hughes, who lived in the same neighborhood. After Sunday School, Johnny said that he could not stay for services and accordingly Minnenhall drove him back and dropped him off in front of the Tate house. Minnenhall returned to the church and stayed through the services, after which he returned home with his grandfather.

Upon that return, they observed a change in the back entrance which consisted of an outer door and an inner door. The outer door which had been slammed tightly shut before the early morning leaving was no longer in that condition. The inner door, which had been left bolted closed, was ajar. Upon a search of the interior of the house, Minnenhall was unable to find a certain .32 caliber pistol and certain coins. A watch and a CB radio were missing. Johnny Hughes confessed to entering the house and taking some of the contents mentioned and he implicated the defendant. Defendant denied any participation and offered an alibi defense.

I

■ Defendant for his first point argues that the trial court erred in allowing the prosecuting attorney to ask improper questions on voir dire which had the purpose and effect of committing the jury to a verdict of guilty. One question directed to the venire panel was, "would the fact that the defendant is eighteen years old prejudice you in any way in your assessment of the punishment?" Another question was "do you have any moral, religious or conscientious scruples which would make it difficult or prejudice you or make it impossible for you to sit and render a judgment against your fellow man? . . . Would that include perhaps even sending a man to jail?"

Those questions do not constitute an improper attempt to commit the jury in advance of the evidence. Rather it represented a proper effort to ascertain any preconceptions or predispositions on the part of the veniremen which might prevent an open minded consideration of the case. *State v. Ford*, 487 S.W.2d 1 (Mo.1972); *State v. McCaine*, 460 S.W.2d 618 (Mo.1970); *State v. Isreal*, 537 S.W.2d 565 (Mo.App. 1976).

II

Defendant next complains of the admission of testimony of three children, one of whom was age 10 and the other two of whom were age 9. The objection is that these children were incompetent for the reason that their testimony did not have an independent basis but instead was induced by suggestions on the part of Minnenhall.

The evidence shows that shortly after discovering the burglary, Minnenhall went around the neighborhood looking for people who might have observed the occurrence and he found the three children in question, Roger Turner, Wilris Turner and Cindy King. Minnenhall stated to each of these children whom it was that he suspected of breaking in. On the basis of that, defendant argues that the testimony given by the three children was induced by Minnenhall's suggestion rather than resting upon independent recollection.

■ In order to qualify as a witness, a young child must have an independent recollection of the occurrence. *Hildreth v. Key*, 341 S.W.2d 601, 610 (Mo.App.1960). That element has been met in this case. Roger Turner and Cindy King both testified that they did, in fact, see defendant break into the back door of the Tate house. Wilris Turner testified that he saw defendant

and two companions come out of the back door of the Tate house carrying a gun, a CB radio and some coins. This evidence was sufficient to support a finding that each of these young witnesses had an independent recollection. The determination as to competency of these witnesses was within the sound discretion of the trial court. *State v. Robertson*, 480 S.W.2d 845 (Mo.1972).

### III

■ Defendant next argues that the prosecutor's opening statement failed to set forth any facts as to a breaking into the Tate home, and that the opening statement was therefore defective under Rule 26.02, Section 546.070 RSMo 1969 and *State v. Jones*, 363 Mo. 998, 255 S.W.2d 801 (1953). The record in this case fails to support the argument. In the course of his opening statement the prosecuting attorney said this: "So Mr. Minnenhall and his grandfather come home later on, and they discovered signs of forcible entry." This statement is sufficient because, aided by inferences reasonably to be drawn therefrom, it informed defendant of the charges against him. *State v. Masters*, 530 S.W.2d 28 (Mo. App.1975).

### IV

Defendant contends next that the court erred in overruling his request to interview State's rebuttal witness Teddy Hughes, who was not endorsed upon the information as a witness. This argument cannot be sustained.

In the course of his alibi testimony, defendant testified that Johnny Hughes and his brother Teddy came to his house to solicit him to join them in breaking into the Tate house and that he refused. In rebuttal, the State called Teddy Hughes who testified that he was out of town at the time of that alleged conversation. Defendant objects that Teddy Hughes was not listed as a witness in the information and that the trial court's denial of his request to interview Teddy Hughes before his testimony deprived him of a right to effective cross-examination.

■ The non-listing of Teddy Hughes on the information is of no consequence because he appeared solely as a rebuttal witness. *State v. Hooker*, 536 S.W.2d 487[6] (Mo.App.1976). Moreover, defendant himself gave rise to the occasion for the State calling Teddy Hughes, by his own testimony that the two Hughes brothers called upon him on the morning of the crime. Defendant's own testimony demonstrates an awareness that Teddy Hughes was a figure of potential importance in the case. That witness was as equally available to defendant as he was to the State, and if defendant failed to interview him before trial that was a situation of defendant's own making.

■ In any event, the testimony by Teddy Hughes was merely cumulative to that of his brother Johnny Hughes, who had previously testified that Teddy was out of the city on the morning of November 16, 1975. Any error with respect to the admission of testimony by Teddy Hughes was therefore lacking in prejudice. See cases collected in Missouri Digest Appeal and Error, Key No. 1051(1).

### V

Defendant next argues that the trial court erred in allowing the prosecutor to state in closing argument that the three child witnesses should be given a reward for coming in and telling the truth. His objection is that whether these witnesses were telling the truth was a jury question as to which the prosecutor should not be permitted to give the jury his own personal belief.

■ A prosecuting attorney has the right to comment upon the evidence and the credibility of witnesses and it is in the sound discretion of the trial court to determine whether such comments are prejudicial. *State v. Brooks*, 298 S.W.2d 511 (Mo. App.1957). The argument here in question falls within that rule. The ruling of the trial court did not constitute an abuse of discretion.

## VI

Defendant objects next that the information and the State's verdict directing instruction both charge that defendant stole among other items a revolver belonging to Harry S. Tate, whereas Tate testified at trial that his revolver had not been taken. On the basis of this, defendant argues that the instruction varies impermissibly from the evidence.

■ Although Tate did testify as indicated, there was evidence by other witnesses that a revolver was in fact taken from the Tate home during the morning in question. It is entirely possible that defendant and his associates took the revolver and then one of them returned it prior to the time that Tate arrived home from church. Accordingly, the testimony by Tate does not necessarily prove an inconsistency between the instruction and the evidence as a whole.

■ Even if it be assumed that the revolver was never removed from the Tate home, still the resulting variance is not fatal. Where an instruction hypothesizes several acts in the conjunctive, a guilty verdict may properly stand if at least one of those acts is supported by evidence. *State v. Stucker*, 518 S.W.2d 219 (Mo.App.1975). Moreover any variance in this respect would not prejudice any rights of the defendant. It is to be noted that he did not contest the taking, but rather attempted to shift the blame to others, arguing an alibi defense for himself. *State v. Scobee*, 331 Mo. 217, 53 S.W.2d 245 (1932). See also *State v. Scott*, 534 S.W.2d 537 (Mo.App.1976).

## VII

■ Defendant contends next that he was deprived of a fair trial because the prosecutor conducted his case in such a way as to require the defendant to make numerous objections and which caused his attorney to appear as an obstructionist. Defendant cites ten instances of such alleged improper conduct on the part of the prosecutor. In some of those instances no objection was made by defendant, and in other instances objections were made and sustained. Whether there was conduct on the part of the prosecutor of a nature depriving defendant of a fair trial was much more within the province of the trial court to decide than an appellate court. The trial court was in a far better position to observe the conduct in question and the effect upon the jury. The trial court denied a motion for new trial based upon the ground now urged, and the record here falls far short of showing any abuse of discretion in that ruling.

## VIII

Defendant complains finally that the prosecutor made misstatements of the evidence in his closing argument which deprived defendant of a fair trial. In his brief in this court defendant sets forth four instances of alleged misstatements. However, no such similar particularity was contained in the motion for new trial, in which defendant contented himself with the broad allegation: "The misstatements of the evidence by the State's attorney on closing argument deprived defendant of a fair trial."

■ Rule 27.20 requires that a motion for a new trial must set forth "in detail and with particularity" the specific grounds relied upon. The assignment quoted above from defendant's motion for new trial plainly fails to meet that requirement and therefore preserves nothing for review. *State v. Hill*, 539 S.W.2d 521[21] (Mo.App. 1976). The invitation to review this question as plain error is declined; the record shows no manifest injustice or miscarriage of justice.

Affirmed.

All concur.