**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant-Respondent,**

v.

**Forrest D. MASON, Respondent-Appellant.**

**No. WD 36397.**

Missouri Court of Appeals, Western District.

Aug. 27, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 1, 1985.

Application to Transfer Denied Feb. 18, 1986.

---

Glenn E. Bradford, James F. Ralls, Jr., Talpers Conger Bronstein Bradford Ralls, Kansas City, for appellant-respondent.

Joe F. Willerth, Independence, for respondent-appellant.

Before SHANGLER, P.J., and TURNAGE and BERREY, JJ.

TURNAGE, Judge.

American Family Mutual Insurance Company filed suit against Forrest Mason to recover the amount American Family had paid Mason on a fire insurance policy. The court entered judgment on a jury verdict for $71,622.69, plus prejudgment interest of $29,759.22, against Mason. The court assessed as costs against American Family $10,968.75, plus $37.50 for expenses, to compensate the guardian ad litem appointed for Mason. The guardian ad litem appeals from the judgment entered against Mason. American Family appeals from the judgment assessing the guardian ad litem

fee and expenses against it as costs. Reversed and remanded.

American Family had issued a policy on the residence owned by Mason and his wife. On August 7, 1979, a fire damaged the house and caused the death of Mason's wife. American Family thereafter paid $71,621.84 on the policy but later came to believe Mason had deliberately set the fire. American Family therefore filed suit against Mason to recover the amount it had paid to him.

Prior to the commencement of American Family's suit, Mason had been convicted on an unrelated manslaughter charge and sentenced to the custody of the Missouri Department of Corrections. American Family served Mason with the summons while he was incarcerated.

Mason filed a pro se answer to the suit and requested the court to appoint counsel to represent him. At the suggestion of the court, Mason attempted to obtain representation through the Legal Services Corporation of Mid-Missouri. Legal Services declined to represent Mason. A later attempt by Mason to obtain representation through Legal Aid of Western Missouri was also unsuccessful.

American Family obtained an attachment bond against a house Mason had purchased subsequent to the fire. American Family was eager to proceed without further delay in order to avoid payment of premiums on the attachment bond.

As a result of correspondence between American Family's counsel and the trial court, the court appointed a guardian ad litem for Mason. The court's action was based on the theory that Mason was physically infirm within the meaning of Rule 52.02(k) and therefore the appointment of a guardian ad litem was permissible and in the best interest of both parties.[1] The court appointed an attorney as guardian ad litem for Mason who undertook to represent Mason and tried the case for him.

---

1. An examination of Rule 52.02 and the statutes referred to therein make it clear that such rule has no application in this case.

Mason was present in court and testified during the trial.

After the trial, the guardian ad litem filed an application for a fee and requested that the fee be assessed as costs against American Family. American Family objected to the assessment of the fee as costs against it. The court ruled that the guardian ad litem had been properly appointed under Rule 52.02 and that justice demanded that the guardian ad litem receive fair and reasonable compensation. The court ordered American Family to pay the guardian ad litem $10,968.75 for attorney's fees and $37.50 for expenses.

The guardian ad litem raises several points in attacking the judgment against Mason. However, in view of the disposition of this appeal it will not be necessary to discuss those points. American Family contends that the judgment against it for the guardian ad litem fee cannot stand because § 514.060, RSMo 1978, requires costs to be adjudged in favor of the prevailing party, American Family prevailed when the judgment was in its favor, and therefore costs cannot be assessed against American Family. The guardian ad litem counters that the court had inherent authority to appoint a guardian ad litem and therefore has inherent authority to award compensation for services rendered.

Although the trial court mentioned the existence of §§ 460.010–460.250, RSMo 1978, the court did not appoint a trustee under those sections. The parties on this appeal make reference to those sections relating to the estate of convicts but do not base their arguments on those sections.

Sections 460.010–460.250 provide a comprehensive plan for the management of the estate of a convict. Section 460.010 provides that a trustee may be appointed by the circuit court on the application of certain persons, including a creditor of the convict. The statute sets out the duties of the trustee after appointment and provides for supervision by the court. Section 460.100 provides that the trustee may sue in his own name on behalf of the convict for the recovery of property belonging to the convict and may defend all actions commenced against the convict.

The effect of the statute providing for the appointment of a trustee to manage the estate and property of a convict was exhaustively considered in *McLaughlin v. McLaughlin*, 228 Mo. 635, 129 S.W. 21 (1910). In *McLaughlin,* the wife brought suit for divorce against McLaughlin while he was confined in the penitentiary. Summons in the divorce case was served on McLaughlin while he was incarcerated. The wife sought alimony and care and custody of the children, and requested that the alimony and support be decreed to her out of property belonging to McLaughlin. The court granted the divorce and vested title to 80 acres McLaughlin owned in the wife. McLaughlin thereafter brought an action to set aside that part of the judgment which divested him of title to the property.

The court noted that no trustee had been appointed for McLaughlin and discussed the provision of the statute governing the appointment of a trustee for a convict who is subject to a suit which may affect his property. The court sustained McLaughlin's contention that the judgment as to the disposition of land was void. The court held that "when the estate of a convict is being attacked by a suit, such convict should be in court through his trustee before a valid judgment could be entered touching his property." *McLaughlin v. McLaughlin, supra,* 228 Mo. at 647, 129 S.W. at 24.

The court also quoted at length from *Rice County v. Lawrence,* 29 Kan. 158 (1883). The court stated that the Kansas statutes providing for the appointment of a trustee for a convict were identical to the Missouri statutes. The court quoted the holding in *Rice County* that when no trustee has been appointed the service of a summons on a defendant while imprisoned must be treated as void and any judgment rendered in such case may be treated as a

nullity. *McLaughlin v. McLaughlin, supra,* 228 Mo. at 650, 129 S.W. at 25.

The court further quoted from *Rice County* the statement that the criminal conviction suspended the convict's creditors' rights to bring action against him. The court continued by quoting:

"After his imprisonment, a trustee might have been appointed, upon the application of plaintiff or any other creditor, to take charge of and manage his estate; but no valid judgment could be rendered after his imprisonment without the appointment of a trustee."

*Id.* at 651, 129 S.W. at 25.

The court further quoted from *Rice County:*

"Inextricable confusion would follow if one creditor proceeded personally against the convict after he is imprisoned, and another against a trustee appointed upon his application. Not only would the proceedings to collect the judgments be liable to conflict, but, moreover, the object of the statute would be nullified."

*Id.* at 650, 129 S.W. at 25.

The court in *McLaughlin* stated that the purpose of the statute providing for the appointment of a trustee for a convict was to compel the appointment of a trustee whenever it was desired to attack his estate for the payment of debts or for the support and maintenance of his wife and children. *Id.* at 652, 129 S.W. at 26. The court further stated that the statute:

[P]rovides a complete scheme within itself for the holding, management, protection, and disbursement of the estate of a convict. Its very purpose is the preservation and protection of the estate and the thwarting of the designs of creditors and others in their attack upon the estate of one helpless by his incarceration.

*Id.* at 653, 129 S.W. at 26.

■ The court quoted from *Rice County* the holding that the statutes providing for a trustee are exclusive. *Id.* at 650, 129

S.W. at 25. This answers the contention that the court had inherent authority to appoint a guardian ad litem, for there could be no inherent authority to do one thing in the face of an exclusive procedure to do another.

The court in *McLaughlin* held that a trustee need not be appointed when the only object of a suit was to obtain a divorce, but a trustee must be appointed if the suit seeks to affect the property of the convict.

*McLaughlin* has been cited with approval in *State ex rel. Brickey v. Nolte,* 350 Mo. 842, 855, 169 S.W.2d 50, 57 (1943) and in *Murphy v. Barron,* 275 Mo. 282, 294, 205 S.W. 49, 52 (1918).

The court in *McLaughlin* also discussed the civil death statute, § 222.010, RSMo 1969. Sections 222.010 to 222.030, RSMo 1969 were repealed by Laws 1977, page 658 effective January 1, 1979.[2] The question naturally arises as to the effect of the repeal of the civil death statute on the trustee statute because McLaughlin discussed both. The court noted that because a prisoner was civilly dead he could not contract with an attorney and therefore had no way to obtain representation. However, the court also discussed the constraints placed on a prisoner because of his incarceration and the resultant inability of a prisoner to protect his interests. The thrust of McLaughlin is not that a trustee must be appointed because the convict is civilly dead, but is rather that the property of a convict must be protected because of the practical inability of a convict to take the steps necessary to protect his own property. Further, the *McLaughlin* court in quoting from *Rice County* pointed out that confusion would follow if one creditor were allowed to proceed against a convict personally while another procured the appointment of a trustee, and that such confusion would nullify the object of the statute.

2. Section 222.010 had been declared unconstitutional in *Thompson v. Bond,* 421 F.Supp. 878 (W.D.Mo.1976), insofar as it denied prisoners access to the courts.

 Further, the legislature did not repeal the statute providing for a trustee for a convict when it repealed the civil death statute. This court finds no nexus between the two statutes which would require a holding that the trustee statute was repealed by implication when the civil death statute was repealed.[3]

The obvious drawback to §§ 460.010–460.250 is the provision of § 460.250 that the trustee shall be allowed as full compensation for his services a commission of 5% on the whole sum which shall come into his hands by virtue of his trust. It is apparent that many convicts will have little or no property, and thus, the trustee will be working for little or no fee. In *State ex rel. Scott v. Roper*, 688 S.W.2d 757 (Mo. banc 1985), it was held that a court has no inherent power to appoint attorneys for convicts to serve in civil actions without compensation. Undoubtedly, the appointment of a guardian ad litem in this case was made in an effort to find a vehicle through which the convict could be represented and at the same time compensation could be paid for that representation.[4]

This is a problem of a practical sort which courts are being called upon to decide. In *Yarbrough v. Superior Court of Napa County*, 39 Cal.3d 197, 216 Cal.Rptr. 425, 702 P.2d 583 (1985), the Supreme Court of California recognized the problem of compensation for lawyers appointed to represent incarcerated civil defendants. The court suggested that the California Bar and the Legislature work together to find a solution.

 However real and practical the problem of obtaining compensation for the trustee, the fact remains that the law is well established in this state that a suit which attacks the property of a convict may not result in a valid judgment unless a trustee has been appointed pursuant to the statute.

The judgment in this case entered following service of summons on Mason while he was incarcerated without the appointment of a trustee cannot stand. The judgment is reversed, including that part assessing the guardian ad litem fee as costs, and this cause is remanded for further proceedings. In the event American Family desires to pursue this matter, and in the event Mason is still incarcerated, it should petition for the appointment of a trustee and the suit should proceed against the trustee.[5]

Costs on this appeal divided equally.

All concur.

---

3. In *McCurry v. Allen*, 688 F.2d 581, 587[6] (8th Cir.1982) the court stated that the trustee statutes were "probably impliedly repealed" by the repeal of the civil death statute. Repeals by implication are not favored in the law. *Allen v. McCurry*, 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980); *Matter of Additional Magistrates, Etc.*, 580 S.W.2d 288, 299 (Mo. banc 1979). This court finds no support for repeal by implication. The statutes made no reference to each other, the legislature repealed only the civil death statutes, and there is no inconsistency between the two. The trustee statutes provide protection for the convict's property quite apart from whether or not he is civilly dead.

4. It is not clear in this case whether or not Mason owned a house. As noted, American Family filed an attachment against a house Mason allegedly acquired after the fire. Whether Mason had sold that house prior to the attachment does not appear.

5. This case does not raise the question of a convict filing a civil suit. Rather, this case only concerns a suit brought against a convict which would affect his property. No view is expressed as to the ability of a convict to bring a civil suit without a trustee.